IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TYRONE EARL WALTON**,

        Plaintiff,

    v.

**G. LANEY**, *Superintendent*, **J. NOFZIGER**, *Hearing Officer*, **M. BROWN**, *Inspector General*,

        Defendants.

Case No. 6:20-cv-1576-SI

**OPINION AND ORDER**

Tyrone Earl Walton, *Pro se*.

Shannon M. Vincent, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street, NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      Plaintiff Tyrone Earl Walton, an adult in custody at Snake River Correctional Institution (SRCI) who is representing himself, alleges that Defendants violated his Eighth Amendment and Fourteenth Amendment rights, as well as his rights under the Oregon Constitution, when they sanctioned him for violating prison rules arising from Walton's fight with another adult in custody. Walton moves the Court for summary judgment on his Fourteenth Amendment claims against Defendants Nofziger and Brown. ECF 25. Defendants cross move for summary judgment

PAGE 1 – OPINION AND ORDER

against all of Walton's claims. ECF 32. For the reasons stated below, the Court denies Walton's motion and grants Defendants' cross motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties cross-move for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial,

the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

On March 3, 2020, Maitland Kamaunu, an adult in custody at SRCI, punched Walton in the head. After being hit, Walton took a step back, but Kamaunu punched Walton again. Walton then threw several punches at Kamaunu and pushed Kamaunu into a nearby closet. It is unclear what happened in the closet, but when prison officials entered the closet to break up the fight, Kamaunu's head was bleeding and partially in a bucket, and Kamaunu reported that Walton had bit him. A piece of flesh was missing from Kamaunu's forehead where Kamaunu was bleeding. That piece of flesh was found on Kamaunu's t-shirt. Kamaunu required outside medical care.

On March 12, 2020, Walton received a misconduct report alleging that Walton violated Rule 2.05.01 by assaulting a fellow inmate. The next day, Defendant Nofziger held a disciplinary hearing on Walton's alleged violation. Before the hearing, Walton acknowledged receiving a copy of the misconduct report, Notice of Hearing, Notice of Rights in a Hearing, and Rules of Prohibited Conduct. At Walton's request, Nofziger considered a video recording of the beginning of the incident.[1] During the hearing, Walton stated that he never hit or bit Kamaunu, but only acted in self-defense by pushing Kamaunu into the closet and holding down Kamaunu down in the closet until prison staff arrived. Based on witness statements, Kamaunu's statement,

---

[1] Kamaunu and Walton cannot be seen on the video after they enter the closet.

and photographs of Kamaunu's injuries, however, Nofziger found that Walton had hit and bit Kamaunu and had therefore violated Rule 2.05.01. Nofziger ordered Walton to 120 days in disciplinary segregation, followed by 14 days of loss of privileges.

Nofziger also ordered Walton to pay restitution for the costs of Kamaunu's medical care. Because a precise amount was unavailable at the time of the hearing, Nofziger deferred a determination of the amount to a later date and asked another prison official to calculate the costs of Kamaunu's medical care, the ambulance that took Kamaunu to an outside medical care provider, and any staff overtime associated with Kamaunu's outside medical care. An email from a prison official to Nofziger stated that the total cost of medical care associated with Kamaunu's injuries was $2,589.54. A different prison official provided Nofziger with a breakdown of the overtime paid to prison staff because of Kamaunu's outside medical care. The total amount of overtime paid totaled $265.33. Together, then, the total cost incurred by Kamaunu was $2,754.87.

On April 29, 2020, Nofziger held a hearing to determine the amount of restitution Walton would be required to pay. During the hearing, Nofziger told Walton that the total cost incurred by Kamaunu was $2,754.87. Walton requested an itemized breakdown of both the staff overtime paid and Kamaunu's medical expenses. Nofziger denied Walton's requests but noted that a breakdown of the staff overtime paid was in the record. Nofziger ordered Walton to pay $1,377.40, half of the total cost incurred by Kamaunu. Walton sought administrative review of his disciplinary hearing. Defendant Brown, SCRI's Assistant Inspector General, conducted the review and upheld Nofziger's determination.

## DISCUSSION

Walton alleges that Defendants violated his Fourteenth Amendment Due Process Clause rights, that Nofziger violated his Eighth Amendment rights, and that Defendants violated his

rights under the Oregon Constitution. Walton moves for summary judgment on his Fourteenth Amendment claim against Nofziger and Brown. Defendants cross move for summary judgment against all claims asserted by Walton. The Court addresses each of Walton's claims in turn.

## A. Fourteenth Amendment

### 1. Defendant Nofziger

"[T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). "Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law." *Id.* at 566. Due Process Clause protections attach to prison disciplinary proceedings, although, because those proceedings "are not part of a criminal prosecution . . . the full panoply of rights due a defendant in such proceedings does not apply." *Id.* Instead, "there must be mutual accommodation" between Constitutional guarantees of adequate process and prisons' legitimate penological interests. *See id.* Thus, "[d]ue process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* Finally, "some evidence" in the record must support a prison's disciplinary decision. *Bruce v. Ylst*, 315 F.3d 1283, 1287 (9th Cir. 2003).

#### a. Nofziger's Determination that Walton violated Rule 2.05.01

Nofziger satisfied these requirements when finding Walton committed the violation. Walton does not contest that he received adequate notice of the charges and evidence against

him. *See Zimmerlee*, 831 F.2d at 186. The transcript of the disciplinary hearing shows Nofziger recounted to Walton the evidence supporting the charges at the beginning of Walton's hearing. Nofziger also allowed Walton to offer documentary evidence. *Id.* Indeed, Walton's request that Nofziger review video footage appears to have influenced Nofziger's understanding of Walton's altercation with Kamaunu.

Finally, there was at least "some evidence" to support Nofziger's conclusion that Walton assaulted Kamaunu. *See Bruce*, 315 F.3d at 1287. An adult in custody violates Rule 2.05.01 when he "[c]auses serious physical injury to another inmate or causes injury to an inmate that requires staff transporting the inmate to an outside agency for medical care." Or. Admin. Reg. § 291-105-0015(2)(c)(A). The video shows Walton trying to punch Kamaunu. Photographs taken after the altercation show Kamaunu's head bleeding, a piece of Kamaunu's forehead missing from where he is bleeding, and the detached piece of Kamaunu's forehead. Witnesses stated that when they discovered Kamaunu and Walton in the closet, Kamaunu exclaimed that Walton bit him. A medical evaluation determined that Kamaunu required outside medical attention. Nofziger could infer from this evidence that Walton hit and bit Kamaunu causing Kamaunu to require outside medical care.

Walton contends that Nofziger violated his due process rights by disregarding that Walton was engaged in self-defense. Assuming that the Due Process Clause required Nofziger to consider Walton's claimed self-defense, *but see Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that liberty interests created by prison regulations "will be generally limited to freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incident of prison life"), Nofziger did not violated the Walton's due process rights because undisputed evidence reveals that Nofziger *did* consider that Walton was defending

PAGE 6 – OPINION AND ORDER

himself. Nofziger noted both that the video footage showed Kamaunu attacking Walton first and that Walton claimed he was attacked by Walton. The transcript also reveals an extensive discussion between Nofziger and Walton about the beginning of the fight. During that discussion, Nofziger acknowledged that Kamaunu started the fight.

Ultimately, Walton appears to want this Court to review Nofziger's decision *de novo*. The Court, however, is limited to reviewing whether Nofziger afforded Walton adequate process in reaching his decision. With respect to Nofziger's finding that Walton violated Rule 2.05.01, the undisputed evidence reveals that Nofziger did.

### b. Nofziger's Restitution Order

Walton also argues that Nofziger violated Walton's due process rights when Nofziger ordered Walton to pay restitution for half of Kamaunu's medical expenses without providing Walton an itemized breakdown of Kamaunu's medical expenses arising from the altercation. Walton contends that a breakdown of the medical expenses was critical to his ability to challenge the amount of restitution ordered against him.

The Due Process Clause dictates that adults in custody must "be allowed to call witnesses and present documentary evidence in his defense," at least "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Thus, prison officials may limit an adult in custody's ability "to compile . . . documentary evidence." *Id.* When prison officials do deny an adulty in custody access to documentary evidence, it is "useful for the [officials] to state [their] reason." *Id.* "[P]rison authorities may not deny a defendant this right 'solely for the sake of administrative efficiency,' and must carry the burden of proving an adequate justification for the denial of a particular prisoner's requests." *Mainard v. Fitzpatrick*, 8 F. App'x 614, 616 (9th Cir. 2001) (quoting *Bostic v. Carlson*, 884 F.2d 1267, 1273-74 (9th Cir. 1989)). Other circuits have applied these principles to restitution

orders in prison disciplinary hearings. *See Barber v. Wall*, 66 F. App'x 215, 215-16 (1st Cir. 2003) (finding no due process violation where an adult in custody was ordered to pay restitution for destruction of prison property but was given "estimated repair costs" before his disciplinary hearing).

Defendants twice attempt to articulate an adequate justification for denying Walton an itemized breakdown of Kamaunu's medical expenses. The Court is not prepared to say that either justification is satisfactory. First, Defendants assert that providing Walton an itemized breakdown of Kamaunu's medical expenses would be unduly hazardous to institutional safety or correctional goals because prisons should not give one adult in custody's private medical information to another adult in custody. The Court accepts the uncontroversial proposition that prisons should protect the privacy of adults in custody, but that explanation does not satisfy Defendants' burden here. *See Mainard*, 8 F. App'x at 616. Although there are likely many instances in which sharing one adult in custody's private medical information with another adult in custody would threaten prison safety, Defendants must specify the threat posed here. Moreover, Defendants' response ignores the narrowness of Walton's request. Walton seeks only a breakdown of the costs of Kamaunu's treatment for the injuries Kamaunu sustained during his altercation with Walton, not any of Kamaunu's other medical history. For these reasons, Defendants bare assertion that complying with Walton's request threatens prison safety or correctional goals is insufficient.

Defendants also argue that Nofziger did not err in denying Walton a breakdown of the cost of Kamaunu's treatment because Nofziger himself lacked that information. This argument is even less compelling. For one thing, "prison authorities may not deny a defendant this right 'solely for the sake of administrative efficiency.'" *Id.* (quoting *Bostic*, 884 F.2d at 1273-74). For

another, Nofziger's alleged error is not denying Walton documentary evidence, it is depriving Walton of a property interest *without affording Walton adequate process*. When prison officials cannot provide adequate process before depriving an adult in custody of a protected interest, prison officials should abandon the deprivation rather than proceed in hope that a court will excuse the mistake. Because the Court doubts the adequacy of either of Defendants' justifications for refusing to provide Walton with a breakdown of the cost of Kamaunu's treatment before ordering Walton to pay restitution, the Court is uncertain whether Nofziger's restitution order violated Walton's due process rights.

Even if Nofziger violated the due process clause, however, Nofziger is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages," *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014), when "the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful, *Romero v. Kitsap County*., 931 F.2d 624, 627 (9th Cir. 1991). To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "The clearly established requirement operates to ensure that before they are subject to suit, government officials are on notice their conduct is unlawful." *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (simplified). The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

There are several reasons to conclude that Nofziger was not "on notice [that his] conduct was unlawful." *Eng*, 552 F.3d at 1075. The Court is aware of no decision *requiring* a prison to

give an adult in custody an itemized breakdown of a victim's medical expenses to before ordering the adult in custody to pay restitution in a prison disciplinary hearing. "It is not necessary," of course, "that the very action in question has previously been held unlawful." *Ziglar*, 137 S. Ct. at 18. "There must be mutual accommodation," however, between Constitutional guarantees of adequate process and prisons' legitimate penological interests. *Wolff*, 418 U.S. at 566. Without a case holding otherwise, Nofziger could have reasonably believed that accommodation of the prisons' legitimate penological interests included denying Walton's request for an itemized breakdown of Kamaunu's medical expenses. Sources of law emphasizing the importance of maintaining the privacy of medical information about adults in custody, *see, e.g.*, *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001) (holding an HIV-positive adult in custody had a constitutionally protected right to privacy in his medical information), bolsters the Court's conclusion that Nofziger reasonable believed that a legitimate penological interest supported denying Walton's request for an itemized breakdown of Kamaunu's medical expenses. The Court finds, therefore, that Nofziger is entitled to qualified immunity.

Because Nofziger did not infringe Walton's due process rights in determining that Walton violated Rule 2.05.01 and because Nofziger is entitled to qualified immunity for any infringement of Walton's due process rights in setting an amount of restitution for Walton's violation, the Court grants summary judgment to Defendants on Walton's Fourteenth Amendment claim against Nofziger. In addition, Walton has moved for summary judgment on his Fourteenth Amendment claim against Nofziger. Because the undisputed evidence reveals that either Nofziger did not infringe Walton's Fourteenth Amendment rights or is entitled to qualified immunity for any infringement, Walton is not entitled to summary judgment in his favor.

PAGE 10 – OPINION AND ORDER

### 2. Defendant Brown

Walton also brings a Fourteenth Amendment claim against Defendant Brown, SRCI's Assistant Inspector General who was tasked with adjudicating Walton's appeal of Nofziger's decision. Because prison regulations "do not provide a right to an appeal of disciplinary proceedings," Brown "did not violate a right of [Walton's] by deciding not to vacate or reopen" Nofziger's decision. *See Woodroffe v. Oregon*, 2015 WL 2125908, at *8 (D. Or. May 6, 2015). The Court therefore grants summary judgment to Defendants on Walton's Fourteenth Amendment claim against Brown. In addition, Walton has moved for summary judgment on his Fourteenth Amendment claim against Brown. Because the undisputed evidence reveals that Brown did not infringe Walton's Fourteenth Amendment rights, Walton is not entitled to summary judgment in his favor.

### 3. Defendant Laney

Finally, Walton brings a Fourteenth Amendment claim against Defendant Laney, SRCI's Superintendent. Walton concedes that his claim against Laney is based on Laney's role as supervisor of the disciplinary process. Claims brought under 42 U.S.C. § 1983 must be brought against an individual defendant for his or her own conduct, not under a theory of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, a defendant can only be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Bacca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Walton has produced no evidence that Laney was personally involved in the disciplinary proceedings and therefore cannot prevail in his § 1983 suit against Laney. The Court therefore grants summary judgment to Defendants on Walton's Fourteenth Amendment claim against Laney.

## B. Eighth Amendment

Walton also claims that Nofziger violated his Eighth Amendment right to be free from cruel and unusual punishment when Nofziger imposed a penalty for Walton's offense disproportionate to the offense. Defendants argue that Walton's penalty (120 days in disciplinary segregation, 14 days without privileges, restitution in the amount of $1,377.40) is not cruel and unusual.

"The Eighth Amendment prohibits imposition of a sentence that is *grossly* disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (emphasis added). "Outside the context of capital punishment," however, "successful challenges to the proportionality of particular sentences have been exceedingly rare," *id.* at 272, and are only likely to be fruitful in "extreme example[s]," like "if a legislature made overtime parking a felony punishable by life imprisonment," *id.* at 274 n.11. To determine whether a sentence is disproportionate to the severity of the crime, the Ninth Circuit has considered "(1) the nature of the crime[;] (2) the legislative purpose behind the sentencing scheme; (3) the sentence [the plaintiff] would receive for the same crime in other jurisdictions; and (4) the sentence [the plaintiff] would receive for the same crime in other jurisdictions." *Norris v. Morgan*, 622 F.3d 1276, 1281-82 (9th Cir. 2010).

The Court has considered the seriousness of Walton's offense and the other relevant factors and concludes that Walton cannot show that his penalty was "grossly disproportionate" to the severity of his offense. *See Rummel*, 445 U.S. at 271; *see also Fitzgerald v. Procunier*, 393 F. Supp. 335, 341 (N.D. Cal. 1975) (granting summary judgment to defendants on an adult in custody's Eighth Amendment claim because, after "taking into account the seriousness of the offense plaintiff was found to have committed [assault]," the court "could not hold that nine

months in segregation was so disproportionate as to constitute cruel and unusual punishment"). The Court grants Defendants summary judgment on Walton's Eighth Amendment claim.

## C. Oregon Constitution

Finally, Walton alleges that Defendants violated portions of the Oregon Constitution. Defendants argue that they are entitled to summary judgment on Walton's claims under the Oregon Constitution because those claims are state law claims that, under the Oregon Tort Claims Act, must be brought in state court. The Court agrees with Defendants.

"The Oregon Tort Claims Act is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties against the state must be brought in state court." *Est. of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."). Walton has sued state employees, not the State. When a plaintiff brings state law claims against "officers, employees or agents of a public body acting within the scope of their employment or duties" and the plaintiff seeks damages less than the amount specified in Oregon Revised Statutes (ORS) § 30.721, however, the State must be substituted for the state employees. ORS § 30.265(3). Thus, Walton's claims under the Oregon Constitution are brought against the State and may only be brought in state court. The Court therefore grants summary judgment in favor of Defendants on Walton's claims under the Oregon Constitution.[2]

---

[2] Some exceptions to state sovereign immunity exist for actions seeking declaratory or injunctive relief for violations of federal law. *See Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974); *Ex Parte Young*, 209 U.S. 123, 160 (1908). No similar exceptions exist for actions seeking declaratory or injunctive relief for violations of state law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("[W]hen a plaintiff alleges that a state official has violated *state* law . . . the entire basis for the doctrine of *Young* and *Edelman* disappears." (emphasis in original)).

## CONCLUSION

The Court DENIES Walton's Motion for Partial Summary Judgment (ECF 25) and GRANTS Defendants' Motion for Summary Judgment (ECF 32).

**IT IS SO ORDERED**.

DATED this 16th day of August, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge